IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

DENNIS HAGY, et al.,

          Plaintiffs,

v.                                    CIVIL ACTION NO.  2:10-cv-01372

EQUITABLE PRODUCTION CO., et al.,

          Defendants.

**MEMORDANUM OPINION AND ORDER**

Pending before the court is the defendant, Equitable Production's ("EQT") Motion for Summary Judgment [Docket 188].  For the reasons discussed below, the court **ORDERS** that the motion for summary judgment is **GRANTED**.  The court further **ORDERS** that counsel for the plaintiffs appear on **Tuesday, May 22nd at 2:00 pm** and show cause why counsel's conduct, described below, is not a violation of Rule 11(b).  *See* Federal Rule of Civil Procedure 11(c)(3).

I.        **Background**

This case arises from allegations by the plaintiffs, Dennis and Tamera Hagy, that the defendants contaminated their well water supply.  The Hagys previously resided in Jackson County, West Virginia, in close proximity to natural gas wells owned by EQT.  The plaintiffs allege that their water was contaminated by the defendants and that, as a result, they have been exposed to hazardous chemicals and suffered illness.

On October 26, 2010, the plaintiffs filed suit in the Circuit Court of Jackson County, West Virginia.  The complaint named EQT, Warren Drilling Company ("Warren"), BJ Services, and Halliburton Energy Services ("Halliburton") as defendants.  The complaint alleged five causes of

action: (1) negligence, (2) private nuisance, (3) strict liability, (4) trespass, and (5) medical monitoring. EQT was named as a defendant on all five counts. On December 10, 2010, defendant Warren removed the case to this court on the grounds of complete diversity of the parties pursuant to 28 U.S.C. § 1332.

On March 26, 2012, the plaintiffs filed a Rule 41 Motion to voluntarily dismiss the claims of Clark Hagy and Dustin Hagy. This motion was granted. The claims of Dennis Hagy and Tamera Hagy remain pending. On March 19, 2012, EQT filed the instant motion for summary judgment. The plaintiffs filed a response, and the defendants have replied. This motion is now ripe for review.

## II. Standard of Review

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a

showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *Ross v. Comm'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *abrogated on other grounds*, 490 U.S. 228 (1989).

### III. Discussion

Initially, EQT argues that all of the plaintiffs' claims have been released for due consideration paid. On October 22, 2007, the Hagys executed a release in exchange for $19,000. The release stated in pertinent part:

> FOR AND IN CONSIDERATION of the sum of Nineteen Thousand Dollars ($19,000), We, Dennis P. Hagy and Tamera J. Hagy, our heirs, successors, or assigns, do forever release, remise and discharge EQUITABLE PRODUCTION COMPANY . . . its successors, assigns and affiliates from all claims to crops, trees, fences, buildings, land, and any other real or personal property, caused by or arising out of anything done or omitted to be done in connection with the drilling operations, construction of well site, access road, pipeline and maintaining, upgrading, repairing, replacing and removal of equipment from the well site, access road, pipeline, and general operations over, under and across property we own, located in Washington District, Jackson County, West Virginia . . . .
> The above Consideration is payment in full for any and all damages which may have occurred in connection with the drilling and production operations for EPC Well ROM #16 511044, 511356, 511357, 511358.

(Ex. K, Damage Release [Docket 188-11]).

EQT explains that, after Mr. Hagy alleged additional damages not contemplated by the initial release, the parties negotiated an additional settlement. This settlement is evidenced by a

- 3 -

written Second Agreement and Release dated April 23, 2008 ("the Second Release"), for which the Hagys received an additional $10,000 consideration. The Second Release states, in pertinent part:

> The Landowner hereby irrevocably and unconditionally releases, acquits and forever discharges EPC, its current and former officers, directors, employees, subsidiaries, agents, attorneys, representatives, affiliates, sister companies, parent companies, related companies, insurers, reinsurers, advisors, assigns, predecessors in interest, successors in interest, joint venturers, and/or affiliated persons or entities . . . from any and all Claims of any kind or nature. "Claims" as used in this Agreement includes any and all liabilities, obligations, agreements, damages, causes of action for injuries to persons or damage to property . . . suits, rights, demands, costs, losses, *whether known or unknown and whether now existing or yet to accrue*, arising from or relating in any way whatsoever to the Drilling Operations and Additional Damage.

(Ex. L, Second Agreement and Release [Docket 188-12]) (emphasis added). The agreement also states that the parties had an adequate opportunity to consult legal counsel in negotiating the agreement. (*Id.*) According to EQT, the Second Release was signed after the Hagys first began to observe changes in their well water and resulting physical symptoms. (Mem. Law in Supp. Def. EQT Produc. Co.'s Mot. Summ. J. [Docket 189], at 8).

"[T]he very nature of a general release is that parties desire to settle all matters forever." *Va. Impression Prods. Co. v. SCM Corp.*, 448 F.2d 262, 265 (4th Cir. 1971). Under West Virginia law, however, a release "ordinarily covers only such matters as may fairly be said to have been within the contemplation of the parties at the time of its execution." *Murphy v. N. Am. River Runners, Inc.*, 186 W. Va. 310, 316-17 (1991) (internal quotations omitted). "While the general rule is that the construction of a writing is for the court; yet where the meaning is uncertain and ambiguous, parol evidence is admissible to show the situation of the parties, the surrounding circumstances when the writing was made, and the practical construction given to the contract by

the parties themselves either contemporaneously or subsequently." *Id.* (quoting *Watson v. Buckhannon River Coal Co.*, 95 W. Va. 164, Syl. Pt. 4 (1923)).

In this case, the language of the release is broad, stating that the landowner "irrevocably and unconditionally releases, acquits and forever discharges" EQT and its affiliates "from any and all Claims of any kind or nature." (Ex. L, Second Agreement and Release [Docket 188-12]). The release defines claims as "any and all liabilities, obligations, agreements, damages, causes of action for injuries to persons or damage to property . . . suits, rights, demands, costs, losses, whether known or unknown and whether now existing or yet to accrue, arising from or relating in any way whatsoever to the Drilling Operations and Additional Damage." (*Id.*) There is no question that the plain language of this release covers the instant dispute between the parties, which arises directly from the drilling operations on the plaintiffs' property. These claims are exactly the type of claims a reasonable person would contemplate might occur as a result of drilling operations. *See* Murphy, 186 W. Va. at 316-17 (explaining that a release normally will cover "only such matters as many fairly be said to have been within the contemplation of the parties at the time of its execution"). The plaintiffs have not argued that their current claims are not covered by the Second Release.

The plaintiffs attempt to avoid the Second Release by arguing that EQT engaged in misrepresentation and fraud in obtaining the release, rendering it invalid. (Pls.' Mem. Opp. Mot. for Summ. J. [Docket 237], at 3-4). As a general rule, "[t]he defenses available to a defendant against the assertion of a release are those applicable to contracts, generally." 29 SAMUEL WILLISTON & RICHARD A. LORD, A TREATISE ON THE LAW OF CONTRACTS, § 73:14 (4th ed.). One potential defense is that the release was obtained by fraud. *Id.* There are two primary types of

fraud relating to contract formation: fraud in the inducement, and fraud in the factum or execution. There are four elements to a claim of fraudulent inducement: 1) the allegedly fraudulent act was committed by the defendant; 2) the act was material and false; 3) the plaintiff justifiably relied upon the act; and 4) the plaintiff was damaged because he relied upon it. *White v. Nat'l Steel Corp.*, 938 F.2d 474, 490 (4th Cir. 1991) (citing *Lengyel v. Lint*, 167 W. Va. 272 (1981)). Fraud in the factum "exists where one by fraud or artifice as in the case of substitution of one instrument for another, or artifice in the concealment of an instrument, is induced to sign an instrument other and different from that presented for signature." *Jones v. Comer*, 123 W. Va. 129, 129 (1941). In West Virginia, "a presumption always exists in favor of innocence and honesty in a given transaction and the burden is upon one who alleges fraud to prove it by clear and distinct evidence." *Steele v. Steele*, 295 F.Supp. 1266, 1269 (S.D. W. Va. 1969). Moreover, "[a] person who fails to read a document to which he places his signature does so at his peril." *Reddy v. Cmty. Health Found. of Man*, 171 W.Va. 368, 373 (1982).

In this case, the plaintiffs have made the following assertion: "EQT conveniently failed to discuss that one of its agents, landman Jeremy White, verbally assured the Hagys that the subject releases *do not* cover damages as a result of contamination to groundwater. This assurance is documented in the recorded conversation between Mr. White and Dennis Hagy. *See* transcript of recorded conversation between Mr. Hagy and Mr. White attached hereto as Exhibit 10." (Pls.' Mem. Opp. Mot. for Summ. J. [Docket 237], at 3). The exhibit cited by the plaintiffs is a 299-page transcript of numerous conversations that the plaintiffs had with several different individuals over a long period of time. There are several statements within these conversations which may be referencing the release; however, the alleged false statement by Mr. White does not

appear in the exhibit. After reviewing the entire exhibit and failing to find the alleged assurance, the court entered an order directing the plaintiffs to provide the court with a line and page number citation by April 24, 2012. (Order [Docket 291]). The plaintiffs have ignored this order and failed to provide the requested information. Based on these facts, I can only conclude that the exhibit provided by the plaintiffs does not in fact contain the alleged assurance by Mr. White. Having found that the representation of the plaintiffs regarding the exhibit was misleading, the court **ORDERS** pursuant to Rule 11(c)(3) that plaintiffs' counsel shall appear on **Tuesday, May 22nd at 2:00 pm** and show cause as to why counsel's conduct, described above, is not a violation of Rule 11(b). *See* Federal Rule of Civil Procedure 11(c)(3).

The plaintiffs point to no other evidence to support their claim that Mr. White told Mr. Hagy that the release did not apply to contamination to groundwater. The plaintiffs have not directed the court to any statements within the 299-page exhibit, and they have not offered any other evidence—not even their own deposition testimony or affidavits—to support their claim that Mr. White told Mr. Hagy that the release did not apply to contamination of groundwater. In the absence of such evidence, the court **FINDS** that there is no genuine issue of material fact regarding whether a verbal statement by Mr. White fraudulently induced the plaintiffs to sign the Second Release by misrepresenting the purpose or content of the document.

Next, the plaintiffs have alleged that EQT fraudulently obtained the release because "prior to securing the Hagy[s'] signature to the April 2008 release, EQT had full knowledge of the problems at the subject well site, yet EQT concealed this knowledge." (Pls.' Mem. Opp. Mot. for Summ. J. [Docket 237], at 5). The plaintiffs then provide a list of what they characterize as "the numerous factual issues relating to the drilling and completion of EQT's well on the Hagy property

which the Defendants would have been privy and chose to conceal from Dennis Hagy." (*Id.*) The list is provided without any further explanation, and is re-produced in full below:

- Cement density not consistent. *See* Ex. 12, Lucky Depo at 72:8-73:7.
- Lost pressure on cement pump. *See* Ex. 12, Luckey Depo At 74:18-75:10.
- EQT being unsatisfied with the cement density. *See* Ex. 13, Luckey Depo. at 77:5.
- Cement density being poor. *See* Ex. 14, Luckey Depo at 78:6-78:11.
- Cement retainer leaking at threads. *See* Ex. 15, Luckey Depo at 80:13.
- Conclusion that there was a problem with the cement pump. *See* Ex. 16, Luckey Depo at 83:21.
- No cement bonding log. *See* Ex. 17, Luckey Depo at 85:10.
- Pressure did not hold at annulus. *See* Ex. 18, Luckey Depo at 88:11-18.
- Partial setting of packer. *See* Ex. 19, Luckey Depo at 89:4.
- Cement charts 'look noisy.' *See* Ex. 20, Luckey Depo at 92:3.
- Water was pumped ahead of cement but "got none back." *See* Ex. 20, Luckey Depo at 92:22.
- Could not hold pressure. *See* Ex. 21, Luckey Depo at 108:21-110:24.
- Marcellus is finicky. *See* Ex. 22, Luckey Depo at 114:18.
- Hagy site was an early Marcellus well. *See* Ex. 23, Luckey Depo at 116:5.
- Hagy site was around the time of the first Marcellus wells. *See* Ex. 24, Luckey Depo at 117:9.

(*Id.*) After providing this list, the plaintiffs state simply: "As a necessary result, genuine issues of material fact abound regarding the validity of the subject releases which preclude the granting of summary judgment." *Id.*

Each of the exhibits cited by the plaintiffs is a short excerpt of a portion of deposition testimony of BJ Services corporate representative Eric Luckey. There are several problems with this list. First, the plaintiffs have not explained the relevance of this testimony, nor have they provided any evidence that the cited information was known to certain EQT officials. Second,

they have not provided any evidence—not even their own affidavits or deposition testimony—to show that the information was withheld from the plaintiffs. Third, the plaintiffs have not provided any evidence or explanation to show that the allegedly withheld information was material to the Hagys' decision to sign the second release. Finally, the plaintiffs have not provided any evidence, affidavits, or testimony to show that the allegedly withheld information in fact impacted Mr. Hagy's decision to sign the waiver. Based on these facts, the court **FINDS** that there is no genuine issue of material fact regarding whether the contract was the product of fraud, either fraud in the inducement or fraud in the factum.

It is uncontested that the plaintiffs signed a general release in exchange for $10,000 consideration from EQT. The plain language of this release covers the subject matter of this action, a fact the plaintiffs have not disputed. The plaintiffs have argued that the contract was induced by fraud, but they have not provided more than a mere scintilla of evidence to support this assertion. Accordingly, the court **FINDS** that there is no genuine issue of material fact regarding whether the Second Release is valid. The court **FINDS** as a matter of law that the plaintiffs' claims were released in the Second Release in exchange for $10,000 consideration. For these reasons, defendant EQT's motion for summary judgment in **GRANTED**.

Additionally, for the reasons discussed above, the court **ORDERS** pursuant to Rule 11(c)(3) that plaintiffs' counsel shall appear on **Tuesday, May 22nd at 2:00 pm** and show cause as to why counsel's conduct, described above, is not a violation of Rule 11(b). *See* Federal Rule of Civil Procedure 11(c)(3).

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: May 17, 2012

_____
Joseph R. Goodwin, Chief Judge