IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

DENNIS HAGY, et al.,

          Plaintiffs,

v.                                    CIVIL ACTION NO.  2:10-cv-01372

EQUITABLE PRODUCTION CO., et al.,

          Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is the defendant, BJ Services Company, USA's ("BJ Services") Motion for Summary Judgment [Docket 193].  For the reasons discussed below, this motion is **GRANTED**.

    **I.**    **Background**

This case arises from allegations by the plaintiffs, Dennis and Tamera Hagy, that the defendants contaminated their well water supply.  The Hagys resided in Jackson County, West Virginia, in close proximity to natural gas wells owned by Equitable Production Co. ("EQT").  The plaintiffs allege that their water was contaminated and that, as a result, they have been exposed to hazardous chemicals and suffered illness.  Initially, there were four defendants in this case: EQT, Warren Drilling Company, Halliburton Energy Services, Inc., and BJ Services.  At this point in the proceedings, only the claims against BJ Services remain.

The plaintiffs assert that the defendants began drilling operations on the property in late 2007, that they completed nitrogen fracturing operations in February 2008, and that the wells in question went into production shortly thereafter.  (Pls.' Resp. Opp. Mot. Summ. J. [Docket 238],

at 4). The plaintiffs claim that BJ Services negligently cemented and fracked the shale-gas wells on the Hagy property for EQT. (Pls.' Answer to Court's Order [Docket 335], at 1). They claim that BJ Services's equipment failed and, as a result, the well-bore was not properly sealed with cement before pressurized fracking fluids were pumped into the ground. (*Id.*)

In approximately July 2008, the plaintiffs claim that they began to notice particles in their water. (Pls.' Resp. Opp. Mot. Summ. J. [Docket 238], at 4). Later that year, the quality of their water began to degrade and the quantity of water available from their well began to decline. (*Id.*) Tests performed on the water from the Hagy well showed an increase in levels of iron and manganese. (*Id.*)

On October 26, 2010, the plaintiffs filed suit in the Circuit Court of Jackson County, West Virginia. The complaint alleged five causes of action: (1) negligence, (2) private nuisance, (3) strict liability, (4) trespass, and (5) medical monitoring. BJ Services was named as a defendant on Counts One, Two, Four, and Five. On December 10, 2010, defendant Warren Drilling Company removed the case to this court on the grounds of complete diversity of the parties pursuant to 28 U.S.C. § 1332.

On June 3, 2011, BJ Services filed a Motion for Partial Judgment on the Pleadings [Docket 50] under Rule 12(c) of the Federal Rules of Civil Procedure. The motion requested that the court enter judgment in its favor on Counts Three and Five, and in its favor as to all claims raised by plaintiffs Dustin Hagy and Clark Hagy. The court granted the motion with respect to Counts Three, Four and Five, and denied the motion with respect to Counts One and Two. (Mem. Op. & Order [Docket 66]).

On March 19, 2012, BJ Services filed the instant motion for summary judgment. On March 26, 2012, the plaintiffs filed a Rule 41 Motion to voluntarily dismiss the claims of Clark Hagy and Dustin Hagy. (Pls.' Rule 41 Motion to Dismiss [Docket 208]). This motion was granted. (Order [Docket 315]). Therefore, the motion for summary judgment is moot with respect to the claims of Clark Hagy and Dustin Hagy. The claims of Dennis Hagy and Tamera Hagy remain pending. Responses to the motion for summary judgment have been filed, and the motion is now ripe for review.

## II. Standard of Review

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere

"scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *Ross v. Comm'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *abrogated on other grounds*, 490 U.S. 228 (1989).

### III. Discussion

At this point in the proceeding, there are three remaining claims against BJ Services: negligence, trespass, and private nuisance.

#### A. Count One: Negligence

Under West Virginia law, "[t]o prevail in a negligence suit, the plaintiff must prove by a preponderance of the evidence that the defendant owed a legal duty to the plaintiff and that by breaching that duty the defendant proximately caused the injuries of the plaintiff." *Strahin v. Cleavenger*, 603 S.E.2d 197, 205 (W. Va. 2004). Proximate cause is a cause "which in actual sequence, unbroken by any independent cause, produces the event and without which the event would not have occurred." *Johnson v. Mays*, 191 W.Va. 628, 633 (1994) (internal quotation marks omitted). "In toxic exposure cases, providing adequate evidence of exposure is required to prove the element of causation and survive a motion for summary judgment." *White v. Dow Chem. Co.*, 321 Fed. Appx. 266, 273 (4th Cir. 2009) (unpublished opinion) (citing *Tolley v. ACF Industries Inc.*, 212 W. Va. 548 (2002)). Proof of causation must be sufficient "to suggest 'probability' rather than mere possibility,' precisely to guard against raw speculation by the fact finder." *Sakaria v. Transworld Airlines*, 8 F.3d 164, 172-73 (4th Cir. 1993). To meet this burden in a toxic exposure case, a plaintiff is required to demonstrate amount, duration, intensity,

and frequency of exposure." *White.*, 321 Fed. Appx. at 273. "Critical to establishing exposure to a toxic chemical is knowledge of the dose or exposure amount and the duration of the exposure." *Tolley v. ACF Indus., Inc.*, 212 W.Va. 548, 559 (2002).

### 1. Allegedly Negligent Act Committed by BJ Services

A plaintiff seeking to recover for negligence must, as an initial matter, prove by a preponderance of the evidence that the defendant breached a legal duty to him. *Strahin v. Cleavenger*, 603 S.E.2d 197, 205 (W. Va. 2004). The plaintiffs' filings in this case are difficult to decipher in many respects. The court was unable to determine from the complaint and the plaintiffs' response to the defendant's motion for summary judgment what negligent act or omission the plaintiffs attribute to BJ Services. On May 23, 2012, the court ordered the plaintiffs to supply supplemental briefing. In this briefing, the court specifically directed the plaintiffs to "Identify the wrongful act or omission by BJ Services that is the subject of this litigation." (Order [Docket 333], at 1). The court has reviewed the plaintiffs' response to this order, and is still unable to identify what action or inaction by BJ Services the plaintiffs allege to have caused them harm.

In their response to the court's order, the plaintiffs state: "BJ Services committed wrongful acts when it cemented and fracked the shale-gas wells on the Hagy property for EQT." (Pls.' Answer to Court Order [Docket 335], at 1). The plaintiffs vaguely reference several problems they believe occurred at the wells on their property. First, the plaintiffs assert, without any supporting citation to evidence in the record, that BJ Services' equipment failed. The plaintiffs do not identify the specific equipment which allegedly failed. Instead, they list "cement mixer/pumps, packer systems and fracking pumps" without any accompanying explanation or

evidentiary support. (*Id.*) The plaintiffs go on to assert that the failed equipment "resulted in conditions enabling fracking fluids to escape from the well-bore into nearby rock formations and then into the Hagy water well." (*Id.*) Again, no evidence is provided to support this assertion.

### a. Alleged Failure to Maintain Proper Cement Density

The plaintiffs claim that "Because its equipment failed BJ Services failed to properly seal the well-bore with cement before pressurized fracking fluids were pumped into the ground." (*Id.*) In support of this assertion, the plaintiffs point to a short job performance survey filled out by an EQT official. The official stated "Could not get good density all the way through the job. We either lost hydraulic pressure, no gauge or supercharger, is going out every time we would get the cement up to weight . . . ." (Ex. 2, Pls.' Answer to Court Order [Docket 335-2]). No further explanation is provided.

Next, the plaintiffs summarily assert that there was a problem with a supercharge pump. The plaintiffs point to a portion of Eric Luckey's deposition in which he states that a supercharge pump "wasn't working perfectly, which affect[s] the density during the job." (Luckey Depo, Ex. 3, Pls.' Answer to Court Order [Docket 335-3]). No further explanation is provided.

Next, the plaintiffs point to the testimony of EQT representative Roy Lawson. When asked if it was unusual "to have cement density poor like this", Lawson replied, "Yes." (Lawson Depo., Ex. 4, Pls.' Answer to Court Order [Docket 335-4]). No further explanation is provided.

Based on the job performance survey and the statements of Luckey and Lawson, the plaintiffs claim that BJ Services failed to maintain proper cement density on wells located on the Hagy property. The plaintiffs have not provided any further explanation regarding these allegations.

- 6 -

### b. Alleged Failure to "Hold Pressure and Properly Place Packers"

Next, the plaintiffs allege that BJ Services failed to properly place packers in order to stabilize the casing pipe and prevent fracking fluids from rising up the well-bore. (Pls.' Answer to Court Order [Docket 335]). In support of this allegation, the plaintiffs rely on a single-page excerpt of Luckey's deposition in which he testified that "Pressure did not hold the annulus" on one of the wells, which he further stated was not standard. (Ex. 7, Pl.'s Answer to Court Order [Docket 335-7]). The plaintiffs have not identified which of the four wells is at issue, nor have they provided any evidence regarding the significance of the pressure on the annulus or how the alleged lack of pressure relates to the harm they claim to have suffered.

### c. "Old Pumps"

Next, the plaintiffs state: "BJ's Old Pumps Blamed for Failure to Maintain Pressure." (Pls.' Answer to Court Order [Docket 335], at 2). The plaintiffs assert that "EQT also took issue with BJ Services for not sending newer equipment capable of maintaining pressure during the fracking of the well." The plaintiffs again cite to the deposition of Luckey, who stated that "our pumps were old and they would actually go down during pressure test." (Pls.' Answer to Court Order [Docket 335-11].) The plaintiffs have not provided any information in order to put Luckey's statement in context, nor have they offered any evidence to show that the pumps used by BJ Services were improper.

The plaintiffs provide a single-page job performance survey filled out by an EQT representative which included the following handwritten comment:

> Pressure test was timely valves installed that leaked, [illegible] iron [illegible]. I have never seen that many issues with pressure testing. [Illegible] Pumpers on first stage could not get up to rate 5 stage when desired rate was reached lost three trucks and could not

> recover with trucks that were still on line. 13 Pumper on site and could not maintain a desirable rate. Day 2 Stages 6, 7, 8 & 9 went perfect. – Rich.

(Ex. 13, Pls.' Answer to Court Order [Docket 335-13]). The plaintiffs do not explain the meaning or significance of this comment, they have not identified the individual who wrote the comment, and they have failed to in any away connect this job performance survey to the harm they claim to have suffered.

In sum, the plaintiffs have failed to provide evidence from which I can identify any wrongful act on the part of BJ Services that caused the plaintiffs harm. Instead, the plaintiffs have made a variety of vague statements and speculative allegations. Having fully and carefully considered the evidence in the record, the court **FINDS** that there is insufficient evidence to create a genuine issue of material fact with respect to whether BJ Services committed negligent conduct.

### 2. Expert Testimony

In an attempt to prove a causal link between BJ Services and the alleged harm suffered by the plaintiffs, the plaintiffs have provided reports of a number of experts who have been challenged by BJ Services. The court finds it unnecessary to determine the admissibility of this testimony, however, because even if all of the plaintiffs' expert testimony is admitted, no genuine issue of material fact exists.

Following discovery, the plaintiffs have not identified the chemical to which they were exposed, let alone provided evidence of dose or exposure amount and duration. It is true that "depending on the circumstances, a temporal relationship between exposure to a substance and the onset of a disease or a worsening of symptoms can provide compelling evidence of causation." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 265 (4th Cir. 1999). However, none of the plaintiffs' experts directly connect any action or inaction on the part of BJ Services to the harm the

- 8 -

plaintiffs claim to have suffered. Rather, the experts all offer general opinions that may connect hydraulic fracturing activities by one of the four originally named defendants on one of the wells located near the Hagys' property to their reported symptoms. This type of evidence is not enough to establish a genuine issue of material fact with regard to whether BJ Services' conduct caused the plaintiffs harm.

At this late point in the proceedings, the plaintiffs have failed to advance a clear theory—let alone provide concrete evidence—connecting this specific defendant to the harm they claim to have suffered. The court has provided the plaintiffs with an additional opportunity to provide supplemental briefing on this issue, and they have still failed to specifically identify the wrongful conduct that they allege caused them harm.

Even taking all of the facts in the light most favorable to the plaintiff and drawing all reasonable inferences in the plaintiffs' favor, the court **FINDS** that the evidence provided is insufficient to create a genuine issue of material fact with respect to the plaintiffs' negligence. The plaintiffs have offered mere speculation in the place of evidence to connect any allegedly wrongful conduct with the harm they claim to have suffered. Accordingly, the court **GRANTS** BJ Services' Motion for Summary Judgment on the plaintiffs' negligence claim.

### B. Trespass

The plaintiffs have also asserted that the defendants committed a trespass on their property. The plaintiffs claim that "[v]iewing the facts in a light most favorable to Plaintiffs, there is evidence that tangible substances owned by Defendants, namely a mixture of hydraulic fracturing fluids/foam, acids and other chemicals in quantities upwards of hundreds of barrels, intruded upon Plaintiffs' aquifer without consent." The plaintiffs have not, however, cited any support for this assertion. While it is true that the court will view underlying facts and inferences in the light most

- 9 -

favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. If there is any concrete evidence that hundreds of barrels of chemicals invaded the plaintiffs' aquifer, this evidence has not been provided to the court. Following discovery, plaintiffs have not provided evidence from which a reasonable trier of fact could conclude that BJ Services is guilty of trespass. Accordingly, the court **FINDS** that there is no genuine issue of material fact with regard to the trespass claim. Summary judgment for the defendant is hereby **GRANTED** with respect to the trespass claim.

### C. Private Nuisance

Under West Virginia law, "[a] private nuisance is a substantial and unreasonable interference with the private use and enjoyment of another's land." *Rhodes v. E.I.du Pont Nemours and Co.*, 657 F. Supp. 2d 751, 767 (S.D. W. Va. 2009). The plaintiffs have not provided any argument or evidence in response to the motion for summary judgment regarding the private nuisance claim. The plaintiffs have not provided sufficient evidence to show a genuine issue of material fact with respect to whether any action by BJ Services caused a substantial and unreasonable interference with the use and enjoyment of their land. Therefore, the court **GRANTS** summary judgment with respect to the private nuisance claim.

### IV. Conclusion

For the reasons discussed above, the court **FINDS** that there is no genuine issue of material fact with respect to any of the plaintiffs' claims. BJ Services' Motion for Summary Judgment is **GRANTED**.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: 29 June 2012

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE